**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **KENNETH STONE,**<br>**Plaintiff,**<br><br>**v.**<br><br>**JEFFREY CASWELL, DONALD PERRY, JOHN CAPPELLO, KAREN HETHERSON, and LUIS SPENCER,**<br>**Defendants.** | **Civil Case No. 12-11574-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff, who was an inmate in a state prison facility, alleges that defendants violated his state and federal civil rights while he was in their custody. Defendants now move to dismiss several of his claims against them.

## I. Background

The following allegations are drawn from the Complaint and accepted as true for the purpose of resolving the pending motion to dismiss:

On February 11, 2010, plaintiff Kenneth Stone was being held in a cell within Taunton District Court. Defendant Jeffrey Caswell, a transportation officer employed by the Massachusetts Department of Correction ("the DOC") on duty, asked about a pair of sneakers located in plaintiff's cell. Plaintiff responded that the sneakers did not belong to him. Defendant Caswell then

entered plaintiff's cell, pointed his finger in plaintiff's face, grabbed him, forced him into a sitting position and, later, forced him to the ground of the lock-up corridor.

Plaintiff filed a grievance with the DOC alleging that the foregoing incident constituted a "use of force" within the meaning of DOC regulations. Defendants Sergeant Donald Perry and Captain Michael Cappello, employed in the Internal Affairs Unit of the DOC, conducted an investigation into plaintiff's grievance. According to plaintiff, defendant Caswell's initial statement regarding the incident contained material falsehoods that resulted in an escalation of the seriousness of the internal investigation.

In recognition of the escalation, defendants Perry and Cappello allegedly permitted defendant Caswell to review a videotape of the incident before interviewing him about it so that Caswell could color his explanation. Defendant Caswell's account of the incident purportedly changed following his viewing of the videotape and defendants Perry and Cappello ultimately concluded that Caswell's actions were reasonable. Defendant Karen Hetherson, an Assistant Deputy Commissioner of the DOC, upon conducting a final review of the incident, also concluded that Officer Caswell's actions were not inappropriate.

Plaintiff now brings a four-count Complaint, alleging that: defendant Caswell used excessive force against him in violation

of 42 U.S.C. § 1983 (Count I) and Massachusetts tort law (Count IV); defendants Perry, Cappello, Hetherson and Commissioner Luis Spencer, by failing to train and supervise Caswell and facilitating a policy or custom of deliberate indifference to plaintiff's constitutional rights, violated 42 U.S.C. § 1983 (Count II); and that all defendants deprived him of his constitutional rights through the use of threats, intimidation or coercion in violation of the Massachusetts Civil Rights Act (Count III).

## II. Legal Analysis

All defendants except Commissioner Spencer now move to dismiss Counts II and III of the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Standard of Review

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). A court may

not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13. When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

**B. Supervisory Liability under 42 U.S.C. § 1983**

In Count II, plaintiff accuses defendants Perry, Cappello, Hetherson and Spencer of violating 42 U.S.C. § 1983 because they allegedly caused his constitutional rights to be violated, in general terms, by inadequately training and supervising correctional officers, including defendant Caswell. More specifically, plaintiff alleges that defendants Perry and Cappello (a) inadequately investigated allegations of misconduct against various unidentified officers and (b) facilitated "untruthful interviews" by permitting offending officers to review video evidence prior to giving statements with respect to their investigation. He also alleges that defendant Hetherson caused the underlying constitutional rights violation by sustaining the findings and conclusions of the Internal Affairs Unit and exonerating officers accused of misconduct without "weighing the evidence."

The moving defendants argue that Count II must be dismissed as to defendants Perry, Cappello and Hetherson because plaintiff's allegations against them are conclusory and fail to demonstrate that those defendants acted with the requisite "deliberate indifference" to be liable under 42 U.S.C. § 1983.

**1. Legal Standard**

Supervisory liability under § 1983 "may not be predicated upon a theory of respondeat superior." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). In other words, an official may not be held vicariously liable for the conduct of his subordinate but rather may be found liable "only on the basis of her own acts or omissions." See id. (citations omitted).

With that in mind, supervisory liability typically arises in one of two ways:

> either the supervisor may be a primary violator or direct participant in the rights-violating incident or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.

Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (internal citations and quotations omitted). In either case, the plaintiff must show "an affirmative link" between the supervisor's conduct and the violation alleged, whether through direct participation or through conduct that amounts to

condonation or tacit authorization. Id.

**2. Application**

It is undisputed that defendants Perry, Cappello and Hetherson did not participate in the underlying constitutional violation, namely, defendant Caswell's alleged use of excessive force against plaintiff. In order for supervisory liability to attach, therefore, defendants Perry, Cappello and Hetherson must have exhibited "deliberate indifference" toward the possibility that deficient performance of their tasks could eventually contribute to a civil rights violation and, further, that such deficient performance was "affirmatively linked" to defendant Caswell's alleged misconduct.

The gravitas of plaintiff's allegations is that the internal review of defendant Caswell's misconduct is representative of a custom or practice of failing to discipline correctional officers for their misconduct. Although the Court agrees with defendants that their alleged involvement in training defendant Caswell is conclusory and should be disregarded, each had some authority over the decision not to discipline Caswell, which is a form of supervisory responsibility. See DiRico v. City of Quincy, 404 F.3d 464, 469 (1st Cir. 2005) (affirming conclusion that municipality's failure to discipline defendant for past misconduct, as applied to those facts, did not constitute deliberate indifference).

Plaintiff further alleges that defendants Perry and Cappello helped defendant Caswell and others avoid discipline by showing video recordings of incidents to him and other offending officers in order to help them concoct a more persuasive explanation of their conduct, and that defendant Hetherson essentially rubber stamped the recommendation of Perry and Cappello without much ado. If ultimately substantiated (and that is a capital "if"), such allegations state a claim because deficient performance of one's duty to discipline officers for misconduct can contribute to civil rights violations and could be "affirmatively linked" to the misconduct alleged here.

Defendants' remaining argument for dismissal is unavailing. Defendants correctly note that a "single incident" of misconduct, in and of itself, is insufficient to establish a custom or practice evidencing "deliberate indifference" and rendering supervisory defendants liable. See, e.g. Mahan v. Plymouth Cnty. House of Corr., 64 F.3d 14, 16 (1st Cir. 1995). The pertinent case law, however, relates to summary judgment or post-trial motions, after plaintiff has had the benefit of discovery. See Mahan, 64 F.3d at 14 (summary judgment); Bordanaro v. McLeod, 871 F.2d 1151, 1154 (1st Cir. 1989) (post-verdict relief); Altman v. Kelly, 36 F. Supp. 2d 433 (D. Mass. 1999) (summary judgment).

Although the circumstances alleged do not appear to present a scenario so egregious as to implicate Caswell's supervisors

plaintiffs allegations, on their face, extend to failures to discipline beyond the facts of this case. Because the Court must not weigh the evidence at this stage nor disregard factual allegations even if their eventual proof is improbable, it is premature to dismiss the pending claims against these supervisory defendants. Accordingly, defendants' motion to dismiss Count II as to these defendants will be denied.

### C. Claims against Defendants in their Official Capacities

Count II alleges violations by defendants Perry, Cappello, Hetherson in both their individual and official capacities. Those defendants move to dismiss any claims for monetary relief based upon actions taken in their official capacity on the grounds that defendants, who are state rather than municipal officials, are not "persons" for purposes of 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (finding suit against state officials in official capacity is against state itself and barred by sovereign immunity). Plaintiff concedes that he cannot obtain monetary relief on the basis of actions taken by defendants in their official capacities but seeks prospective equitable relief, in the form of an injunction prohibiting future misconduct, against those defendants for any actions taken in their official capacity. Recovery of such prospective relief, and attorneys' fees, is permissible. Missouri v. Jenkins by Agyei, 491 U.S. 274, 284

(1989). Accordingly, defendants' motion to dismiss claims against them in their official capacities will be allowed but plaintiff's claims remain viable insofar as they seek prospective equitable relief and fees.

**D. Massachusetts Civil Rights Act**

Defendants argues that Count III, which alleges violations of the Massachusetts Civil Rights Act, Mass. Gen. Laws. c. 12, § 11I ("the MCRA"), fails to state a claim because plaintiff fails to identify that any deprivation of plaintiff's constitutional rights was accomplished through threats, intimidation or coercion.

**1. Legal Standard**

To state a claim under the MCRA, a plaintiff must establish that 1) his exercise or enjoyment of rights secured by the federal or state constitutions or laws 2) has been interfered with, or attempted to be interfered with, and 3) the interference or attempted interference was by "threats, intimidation, or coercion." Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006). The Supreme Judicial Court has determined that because the act is a civil rights statute and intended to be remedial, it is "entitled to a liberal construction of its terms." Id. The act is not, however, intended to create a "vast constitutional tort" and its application is limited to instances where the derogation of secured rights occurs by "threats, intimidation or coercion."

Id.

The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." Columbus v. Biggio, 76 F. Supp. 2d 43, 54 (D. Mass. 1999) (quoting Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996)); see also Gallagher v. Commonwealth, No. 00-11859-RWZ, 2002 WL 924243, at *3 (D. Mass. March 11, 2002) ("The use of force is not, in itself, coercive within the meaning of the act unless such force is inflicted in order to achieve some further purpose.").

**2. Application**

Simply put, plaintiff alleges a direct deprivation of his civil rights, i.e. that defendants "constrained him" against his will, thereby depriving him of his Fourth Amendment right against unlawful constraint and force and in violation of the MCRA. The problem is that the constraint itself is a direct deprivation and cannot satisfy both the "deprivation" and "threats, intimidation, and coercion" elements under the MCRA. See Gallagher, 2002 WL 924243, at *3.

Plaintiff alternatively argues that, because defendant Caswell reacted to plaintiff's complaint that he was missing a shoe, he coerced him into foregoing the exercise of his First Amendment right to free speech. This argument also fails because

plaintiff does not allege that defendant's actions were intended to coerce him from making further statements. That is distinct from a situation where the plaintiffs were previously warned not to do something and arrested when they disregarded the warning. Cf. Sarvis v. Boston Safe Deposist and Trust Co., 711 N.E.2d 911, 918 (Mass. 1999) (arrest after threat of arrest was "instrinically coercive").

Finally, plaintiff claims that the foregoing analysis and case law concerning "direct deprivations" only apply when the constitutional right at issue is a procedural one. That claim is clearly incorrect. Plaintiff relies upon Longval v. Commissioner of Correction in support of that assertion, wherein a prisoner primarily claimed that his transfer to a segregation unit absent a hearing violated the MCRA. See 535 N.E.2d 588, 589-90 (Mass. 1989). The Longval court concluded that shackling and handcuffing the prisoner was not, by itself, "coercive" under the MCRA and, with particular relevance to this case, held

> [s]imilarly, we see no coercion, within the meaning of the State Civil Rights Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action.

Id. at 593.

Plaintiff asks the Court to apply the MCRA as if it created a "vast constitutional tort." This, it will not do. None of plaintiff's alleged violations of the MCRA assert deprivations by

way of threats, coercion or intimidation and Count III will, therefore, be dismissed.

**ORDER**

In accordance with the foregoing, defendants' motion to dismiss (Docket No. 15) is, with respect to Count III, **ALLOWED**, but, with respect to Count II, **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 17, 2013